UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| **CARLOS MARTINEZ,**<br>　　　　Plaintiff,<br><br>v.<br><br>**SPACE EXPLORATION<br>TECHNOLOGIES CORP a/k/a SPACEX,**<br>　　　　Defendant. | §<br>§<br>§<br>§<br>§　Civil Action No.: 1:22-CV-85<br>§<br>§<br>§<br>§ |

### DEFENDANT'S FIRST AMENDED UNOPPOSED MOTION TO COMPEL ARBITRATION AND DISMISS THE LITIGATION

**Ramon D. Bissmeyer, Attorney In Charge**
TX State Bar No. 00787088
So. Dist. Bar No. 17446
**Kelly E. Preston**
TX State Bar No. 24092912
So. Dist. Bar. No. 3110232
Weston Centre, 112 E. Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone:  (210) 554-5500
Fax:  (210) 226-8395
Email:  RBissmeyer@dykema.com
Email:  KPreston@dykema.com

**ATTORNEYS FOR DEFENDANT,
SPACE EXPLORATION
TECHNOLOGIES CORP.**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ................................................................................................................. i
TABLE OF AUTHORITIES ......................................................................................................... ii
I.     FACTUAL BACKGROUND ............................................................................................ 1
II.    LEGAL ARGUMENT ....................................................................................................... 3
       A.    FEDERAL AND STATE LAW FAVOR ARBITRATION AGREEMENTS. ...... 3
       B.    PLAINTIFF AND SPACEX ENTERED INTO A VALID ARBITRATION
             AGREEMENT ........................................................................................................ 6
             2.     Employment Verification............................................................................. 7
             3.     IP Address Validation ................................................................................. 9
             4.     Audit Trail of Arbitration Agreement ........................................................ 10
       C.    PLAINTIFF'S CLAIMS ARE WITHIN THE SCOPE OF THE ARBITRATION
             AGREEMENT ...................................................................................................... 13
       D.    THE COURT SHOULD DISMISS THE LAWSUIT .......................................... 14
CERTIFICATE OF SERVICE ................................................................................................... 166

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 24R, Inc.*,
 324 S.W.3d 564 (Tex. 2010)..................................................................................................12

*Aerotek, Inc. v. Boyd*,
 624 S.W.3d 199 (Tex. 2021)..................................................................................................12

*Am. Express Co. v. Italian Colors Rest.*,
 570 U.S. 228 (2013)..................................................................................................................3

*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011)..................................................................................................................3

*Cantella & Co., v. Goodwin*,
 924 S.W.2d 943 (Tex. 1996)..................................................................................................14

*Carter v. Country Wide Credit Indus.*,
 362 F.3d 294 (5th Cir. 2004) ..................................................................................................3

*Circuit City Stores v. Adams*,
 532 U.S. 105 (2001)..................................................................................................................4

*In re Dallas Peterbilt, Ltd.*,
 196 S.W.3d 161 (Tex. 2006) (per curiam)........................................................................4, 12

*In re Dillard Dep't Stores, Inc.*,
 198 S.W.3d 778 (Tex. 2006)....................................................................................................4

*Floyd v. Kelly Servs., Inc.*,
 No. 3:18-CV-2247-K, 2019 WL 4452309 (N.D. Tex. Aug. 30, 2019) ...................................12

*Gilmer v. Interstate/Johnson Lane Corp.*,
 500 U.S. 20 (1991)....................................................................................................................4

*Griggs v. S.G.E. Mgmt., L.L.C.*,
 905 F.3d 835 (5th Cir. 2018) ................................................................................................14

*In re Halliburton Co.*,
 80 S.W.3d 566 (Tex. 2002)........................................................................................4, 12, 13

*Kubala v. Supreme Prod. Servs., Inc.*,
 830 F.3d 199 (5th Cir. 2016) ..................................................................................................4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ................................................................................................. 4, 13

*Quinn v. EMC Corp.*,
    109 F. Supp. 2d 681 (S.D. Tex. 2000) ........................................................................ 13

*Rachal v. Reitz*,
    403 S.W.3d 840 (Tex. 2013) ......................................................................................... 4

*Rainey v. Citigroup, Inc.*,
    779 F. App'x 258 (5th Cir. 2019) ............................................................................... 14

*Ruiz v. Donahoe*,
    784 F.3d 247 (5th Cir. 2015) ...................................................................................... 14

**Statutes**

28 U.S.C. §§ 1331 and 1446 ................................................................................................ 3

Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. ........................... 2, 3, 13

Title VII of the Civil Rights Act ......................................................................................... 2

Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ........................................................ 1, 2, 3, 12

TEX. CIV. PRAC. & REM. CODE § 171.001(a) .................................................................... 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| **CARLOS MARTINEZ,**<br>Plaintiff,<br><br>v.<br><br>**SPACE EXPLORATION**<br>**TECHNOLOGIES CORP a/k/a SPACEX,**<br>Defendant. | § § § § § § § § §   Civil Action No.: 1:22-CV-85 |

### DEFENDANT'S FIRST AMENDED UNOPPOSED MOTION TO COMPEL ARBITRATION AND DISMISS THE LITIGATION

DEFENDANT SPACE EXPLORATION TECHNOLOGIES CORP. ("Defendant" or "SpaceX") files this First Amended Unopposed Motion to Compel Arbitration and Dismiss Litigation (the "Motion") pursuant to the Federal Arbitration Act,[1] 9 U.S.C. § 1, *et seq.* (the "FAA"):

### I.   FACTUAL BACKGROUND

SpaceX hired Plaintiff as a Fabrication Technician on February 21, 2020. As part of his new-hire on-boarding, Plaintiff and SpaceX mutually agreed to enter into an Employee Arbitration and Dispute Resolution Agreement and Class Action Waiver (the "Arbitration Agreement"), pursuant to which they mutually agreed to resolve all disputes between them through arbitration: "As a condition of my becoming employed (or my employment being continued) by Space Exploration Technologies Corp….and in consideration of my employment relationship with SpaceX and my receipt of the compensation now and hereafter paid to me by SpaceX, I agree to the following:

---

1 Paragraph 11 of the Arbitration Agreement provides that the Arbitration Agreement is made under the provisions of the Federal Arbitration Act (9 U.SC. §§ 1-14) ("FAA") and will be construed and governed accordingly. *See* Exhibit A-1 at ¶11.

…

[I]n consideration and as a condition of being employed by SpaceX and SpaceX's promise to arbitrate all Covered Claims, I agree that:

1. The Parties shall resolve all Covered Claims (as defined below) through final, binding, and confidential arbitration, and as such, **EACH PARTY WAIVES THE RIGHT TO EITHER A JURY OR BENCH TRIAL AS TO ANY COVERED CLAIM.**

…

3. A "Covered Claim" is any claim (except a claim that by law is non-arbitrable), including without limitation and by way of example only: claims of employment discrimination and harassment (e.g., under Title VII of the Civil Rights Act, as amended…the Age Discrimination in Employment Act, as amended…);…wrongful termination, wrongful discharge, discrimination, harassment, unlawful retaliation…

4. Any claim subject to this Agreement shall be arbitrated by one arbitrator in accordance with the Employment Arbitration Rules and Procedures of the Judicial Arbitration and Mediation Service ("JAMS")….

…

7. SpaceX will be responsible for all arbitration fees, except I will be required to pay up to the amount I would have been required to pay the applicable lower court in order to file a civil complaint….

…

11. This agreement is made under the provisions of the Federal Arbitration Act (9 U.S.C. sections 1-14) ("FAA") and will be construed and governed accordingly. It is the Parties' intention that both the procedural and substantive provisions of the FAA shall apply.

…

**BY SIGNING THIS AGREEMENT, I KNOWINGLY AND VOLUNTARILY WAIVE THE RIGHT TO TRIAL BY JURY OR JUDGE FOR ANY COVERED CLAIM….**

*(See* Declaration of John Sandhu, a true and correct copy of which is attached hereto and incorporated by reference as Exhibit A; *see also* Exhibit A-1, a true and correct copy of the Arbitration Agreement.

Despite his knowing and voluntary agreement to arbitrate any and all disputes with Defendant and his waiver of the right to institute a lawsuit against Defendant, Plaintiff filed his Original Petition and Jury Demand in Hidalgo County District Court on May 31, 2022, alleging age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. ("ADEA"). (*See* Dkt. # 1-2, pp. 5-12). Defendant timely filed its Original Answer and Affirmative Defenses to Plaintiff's Original Petition, Subject to Motion to Compel Arbitration in state court on June 21, 2022. (*See* Dkt. # 1-3, pp. 11-15). Subsequently, on June 30, 2022, Defendant filed its Notice of Removal in this Court pursuant to 28 U.S.C. §§ 1331 and 1446 on the basis of federal question jurisdiction, in light of Plaintiff's ADEA claim against Defendant. (*See* Doc. 1).

Because the Arbitration Agreement binds the parties to arbitrate the instant employment dispute, the parties conferred and agreed to proceed to arbitration; consequently, this Motion is unopposed by Plaintiff.[2] Accordingly, this Motion should be granted, this litigation should be dismissed, and Plaintiff should be compelled to comply with the procedures outlined in the Arbitration Agreement to arbitrate his claims pursuant to his prior agreement.

## II.    LEGAL ARGUMENT

### A.  FEDERAL AND STATE LAW FAVOR ARBITRATION AGREEMENTS.

This Motion is filed pursuant to and governed by the FAA, 9 U.S.C. § 1, *et seq*. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Carter v. Country Wide Credit Indus.*, 362 F.3d 294 (5th Cir. 2004). Under the FAA, Congress declared a national policy favoring arbitration and withdrew the power of states

---

[2] The undersigned counsel first contacted Plaintiff's counsel regarding the applicable Arbitration Agreement on June 29, 2022. Plaintiff's counsel requested sufficient time to confer with Plaintiff regarding the Arbitration Agreement. On July 15, 2022, Plaintiff's counsel notified the undersigned counsel that Plaintiff was not opposed to this Motion.

to require a judicial forum for the resolution of claims if the parties had agreed to arbitrate. *Concepcion*, 563 U.S. at 345-346 ("[O]ur cases place it beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration,' and 'a liberal federal policy favoring arbitration agreements . . . .'") (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

This strong national policy favoring arbitration has been applied with equal force by the Supreme Courts of both the United States and Texas to agreements such as the present policy that require the arbitration of employment-related claims. *See, e.g.*, *Circuit City Stores v. Adams*, 532 U.S. 105 (2001); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991); *Rachal v. Reitz*, 403 S.W.3d 840 (Tex. 2013); *In re Dallas Peterbilt, Ltd.*, 196 S.W.3d 161 (Tex. 2006) (per curiam); *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778 (Tex. 2006); *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002). Indeed, both the United States Supreme Court and the Texas Supreme Court have consistently enforced agreements—much like the Arbitration Agreement here—to require the arbitration of employment-related claims. These decisions are based, in large part, on the strong presumption favoring arbitration that exists in both federal and Texas jurisprudence. *See, e.g.*, *Gilmer*, 500 U.S. at 25.

When reviewing a motion to compel arbitration, courts in this Circuit follow a two-step process. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). First, applying ordinary principles of contract law, the court must determine whether the parties entered into a valid agreement to arbitrate some set of claims. *Id.* at 201-02. If the court finds there is a valid arbitration agreement, it then interprets the contract to determine whether the claims at issue in the litigation are covered by the agreement. *Id.* at 201.

B.   **PLAINTIFF AND SPACEX ENTERED INTO A VALID ARBITRATION AGREEMENT**[3]

SpaceX can demonstrate that Plaintiff signed the Arbitration Agreement as part of the company's onboarding process. SpaceX uses a human resources ("HR") information system called Workday Human Capital Management ("Workday") to administer the employee onboarding process for its new hires. As part of the onboarding process, new hires are expected to review and complete employment documentation (*e.g.*, disability self-identification, federal withholding elections (W-4), employment eligibility verifications (I-9), benefit enrollments, and other forms) through Workday using Adobe Sign.

Adobe Sign is a software package that executes the electronic signing process within Workday's applications. As a Workday Select Partner, Adobe Sign is integrated into and supported by Workday. This integration allows Workday's clients to collect e-signatures directly in Workday Business Processes by using Adobe. Workday Business Processes are specific process flows within Workday where all transaction-related changes originate. To implement this electronic signature capability into Workday Business Processes, SpaceX purchased a license for Adobe Sign and activated that license.

One of the documents that can be completed only in Workday, using Adobe Sign, is the "Employee Arbitration and Dispute Resolution Agreement and Class Action Waiver" ("Arbitration Agreement"). The digital trail establishes that Plaintiff Carlos Martinez electronically signed the Arbitration Agreement.

---

[3] Factual support for every assertion in this Section can be found in "Exhibit A".

### 1. Multi-Level Password Protection

Upon hire, each new employee is provided a hyperlink and instructions to access his/her own Workday profile. For first-time access to Workday, SpaceX's Information Technology ("IT") Department randomly generates a unique username and password for each new employee. The employee's username will not change. However, after signing in the first time, the new employee must create a new password. In Plaintiff's case, the hyperlink and instructions to access his Workday profile were sent to the email address provided by Plaintiff in his application, "el.cayito.mtz@gmail.com." SpaceX had used this email address to communicate with Plaintiff previously and throughout his recruitment process. Only the employee can change his/her own password.

Plaintiff's Workday login session indicates that Plaintiff signed on and changed the password on 02/23/2020 at 3:03 pm.[4] Employee passwords are stored in an encrypted form. SpaceX does not have the ability to decrypt and read the password values of its employees.

For any subsequent access of the employee's Workday profile, the employee has to go through two levels of password-protected access. First, the employee has to enter his/her email username and password to log into his/her email account in order to access the emailed hyperlink through which he/she can be directed to Workday. Once directed to Workday, the employee then has to enter his/her unique Workday username and password—which is known only to him/her—to gain access to his/her Workday profile. As noted above, employee passwords are encrypted, and SpaceX does not have the ability to decrypt and review any employee's password values.

---

[4] *See* Exhibit A at ¶7; *See also* Exhibit A-2, a true and correct copy of a screenshot of Plaintiff's Workday login session.

To access Plaintiff's Workday profile, someone would have to know Plaintiff's email and Workday usernames and passwords to bypass the multi-level password protection created by, and known only to, Plaintiff himself.

### 2. Employment Verification

Once the new employee logs into Workday for the first time, the employee is directed to the Personal Information and Contact Information sections of his/her Workday profile. Each employee is required to review, enter, and confirm his/her legal name, preferred name, gender, date of birth, marital status, race/ ethnicity, citizenship status, nationality, disability status, military status, mailing address, phone number, and email address. The information provided by each employee is used to complete his/her mandatory onboarding process in Workday.

Further, once the new employee logs into Workday for the first time, he or she is also directed to the "Edit Government IDs" section of his/her Workday profile and is required to enter and submit his/her Social Security Number ("SSN") or other government-issued identification number. The employee's SSN or other government-issued identification number is required to complete some of the mandatory onboarding documents in Workday (*e.g.*, federal withholding elections (W-4) and employment eligibility verifications (I-9)). To access Plaintiff's Workday profile, someone would have to know Plaintiff's personal information, contact information, and SSN.

To complete the onboarding process, SpaceX is required to examine evidence of the employee's identification and employment authorization by reviewing physical copies of the employee's identification and authorization documents, as enumerated in the I-9 employment eligibility form (for example, the employee's U.S. passport or his/her state-issued driver's license and Social Security Card). Each employee is then required to provide physical copies of these identification and employment authorization documents to HR within a certain number of days

after starting work.  The information entered by each employee in his/her Workday profile is compared against these physical documents to ensure that the information submitted on the employee's Workday is correct.

Plaintiff completed his E-verified I-9 form (employment eligibility verification) in Workday.[5]  (Plaintiff's and SpaceX's identifying information have been redacted to preserve privacy and confidentiality).  Page 1 of Exhibit A-3 is the first page of Plaintiff's I-9 form. Section 1 of Plaintiff's I-9 form ("Employee Information and Attestation") shows that Plaintiff entered his address, date of birth, Social Security Number, and telephone number into Workday, information that only he should know. It also shows that Plaintiff entered the email address of "el.cayito.mtz@gmail.com" into his I-9 form, which is identical to the email address that Plaintiff provided in his job application.  The signature line shows that Plaintiff attested to the accuracy of this information by electronically signing this form on February 23, 2020.  Plaintiff checked the box "I did not use a preparer or translator" when completing the Employee Information and Attestation section of his I-9 form.  Page 3 of Exhibit A-3 is a copy of Plaintiff's U.S. Driver's License and Social Security Card, which Plaintiff produced in-person on February 26, 2020 to complete his I-9 process.  Page 4 of Exhibit A-3 is the E-verification confirmation of Plaintiff's completed I-9 form.  E-verify is an internet-based work authorization verification program operated by the U.S. government.  Workday is an E-verify integrated vendor.  Plaintiff initiated his I-9 process in Workday on February 23, 2020 at 3:46 p.m. (Pacific time) by entering the information noted above.  The process was completed on March 2, 2020 at 3:58 p.m. (Pacific time) after HR received Plaintiff's supporting documents.

---

[5] *See* Exhibit A at ¶14; *See also* Exhibit A-3, a true and correct copy of Plaintiff's E-verified 1-9 form (redacted).

**FIRST AMENDED UNOPPOSED MOTION TO COMPEL ARBITRATION**              Page | 8
4856-3007-6719.1

Plaintiff completed his W-4 federal withholding elections form in Workday on February 23, 2020 at 3:42 p.m. (Pacific time).[6]  Plaintiff also completed his W-4 form (federal withholding elections) in Workday (Plaintiff's and SpaceX's identifying information have been redacted to preserve privacy and confidentiality).[7]  The Social Security Number and home address that Plaintiff entered into Workday were identical to that contained in the hard copies of Plaintiff's I-9 identification and work authorization documents that Plaintiff later physically handed to HR shortly after starting his position on or around February 24, 2020.

### 3. IP Address Validation

When an employee signs into Workday and electronically signs a document using Adobe Sign, those transactions are time-stamped and recorded separately by the Workday platform and also the Adobe Sign application.  Exhibit A-2 lists the details of the Plaintiff's Workday System Account Sign-On and shows that Workday recorded Plaintiff signing into his Workday Account ("cmartinez / Carlos Martinez") on February 23, 2020 at 3:03 p.m. (Pacific time) and remained logged into his account until he exited later that same day at 3:50 p.m. (Pacific time).[8]  Plaintiff logged into his Workday account using a Desktop device with the Internet Protocol ("IP") address, 72.180.245.51.  Each device connected to the internet or a local network displays an IP address specific and unique to it.

While signed into Workday, Plaintiff opened and electronically signed the Arbitration Agreement using Workday's Adobe Sign application.  Separate from Workday, Adobe Sign also time-stamped and recorded transactions completed using its program.[9]  This audit log indicates

---

[6] *See* Exhibit A at ¶15; *See also* Exhibit A-4, a true and correct copy of a screenshot of the W-4 Federal Withholding section of Plaintiff's Workday Account.

[7] *See* Exhibit A at ¶16; *See also* Exhibit A-5, a true and correct copy of Plaintiff's W-4 form (redacted).

[8] *See* Exhibit A-2.

[9] *See* Exhibit A at ¶18; *See also* Exhibit A-6, a true and correct copy of Plaintiff's Adobe Sign audit log.

that Adobe Sign recorded Plaintiff electronically signing the Arbitration Agreement on February 23, 2020 at 11:29 p.m. (GMT or Greenwich Mean Time) which was equivalent to approximately 3:29 p.m. (Pacific time). Plaintiff electronically signed the Arbitration Agreement using a device with the IP address, 72.180.245.51, which was identical to the device that Plaintiff was using at the time to sign into his Workday Account. Plaintiff electronically signed the Arbitration Agreement while he was still logged into his Workday account, all from the same device.

After Plaintiff completed his signing of the Arbitration Agreement, Adobe Sign populated the signed Arbitration Agreement into Workday.[10] Exhibit A-7 shows that Workday recorded receiving Plaintiff's signed Arbitration Agreement from Adobe Sign on February 23, 2020 at 3:34 p.m. (Pacific time).

### 4. Audit Trail of Arbitration Agreement

To complete the Arbitration Agreement e-signature process in Workday, each employee is required to navigate to his/her own Workday inbox, review the task (*i.e.*, message) called Arbitration Agreement, and click the button labeled "E-sign by Adobe Sign", which opens the Arbitration Agreement PDF for review and signature. To complete signature, the employee is required to: (1) either scroll down through the 4-page document or click the yellow "Start" arrow; (2) type their full name in the "By (print name)" field; (3) click their mouse pointer in the "Name (signature)" field; (4) type their full name again where it appeared as though it were a signature; (5) move their mouse pointer and click the button "Click to Sign" in the Adobe window (after which they were provided an opportunity to download the signed agreement); and (6) finally, to fully record the signed agreement and deliver it to SpaceX, the employee is required to move their

---

[10] *See* Exhibit A at ¶19; *See also* Exhibit A-7, a true and correct copy of a screenshot of the Documents section of Plaintiff's Workday Account.

mouse pointer and click the button "Submit" in Workday (at which point they had the opportunity to input any comments to associate with the document). After clicking "Submit," the employee receives confirmation of submittal visually with a green check mark with the text "Process Successfully Completed." The signed agreement is then stored and accessible by the employee in the "Documents" section of their Workday account, from where the employee can view and download the document, which showed (shows)s the signature date of the file.

Upon completion of the task, and signature of the Agreement, SpaceX's HR department may view the submitted document by logging into Workday and searching for the employee by either name or employee ID. The employee's signed documents are stored under the Documents section of the Personal tab.

SpaceX is able to review user activity in Workday. SpaceX searched for Plaintiff's user activity on Workday. This data is stored in Workday within its own storage systems. By design, SpaceX cannot change this data without creating record of doing so.

Plaintiff's Workday account confirms that Plaintiff executed the Arbitration Agreement on February 23, 2020.[11] As discussed above, Plaintiff would have needed to complete the multi-level password protection process discussed above to log into his Workday profile using his unique username and password to execute the Arbitration Agreement.

Workday tracks user logins and system activities and SpaceX can produce an "audit trail" to report out those changes. An audit trail is an automatically generated document which reports any changes to data. On the audit trail, the "Entered On" column tracks when the activity began, and the "Added" and "Removed" columns show what changes were made to the particular task.

---

[11] *See* Exhibit A at ¶23; *See also* Exhibit A-8, a true and correct copy of Plaintiff's Workday audit trail.

The Workday audit trail also shows that on February 23, 2020, at 3:34:59 p.m. (Pacific time), Plaintiff completed the required task by electronically executing the Arbitration Agreement. This is demonstrated in the "Attribute" column which states "Completed Date." The task was completed by Plaintiff as demonstrated by the "By User" column which lists "cmartinez / Carlos Martinez" as the user. The task was completed on February 23, 2020, at 3:29:19 p.m., as recorded in the "Entered On" column.

A copy of the electronically-executed Arbitration Agreement submitted by Plaintiff on Workday was stored in Plaintiff's personnel file.[12] Workday reflects that the individual who electronically executed this Arbitration Agreement was a person who self-identified as "Carlos Martinez" and who accessed the arbitration agreement from the email address, "el.cayito.mtz@gmail.com".[13]

In sum, the evidence confirms Plaintiff electronically signed his acknowledgment of receipt and understanding of the Arbitration Agreement. "Texas law recognizes the legal effect of electronic signatures." *Floyd v. Kelly Servs., Inc.,* No. 3:18-CV-2247-K, 2019 WL 4452309, at *3 (N.D. Tex. Aug. 30, 2019), report and recommendation adopted, No. 3:18-CV-2247-K, 2019 WL 4447538 (N.D. Tex. Sept. 16, 2019) (*citing* TEX. BUS. & COM. CODE § 322.007(a) ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.")). *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199 (Tex. 2021) (finding that employee validly agreed to arbitration agreement by electronically signing same).[14]

---

[12] *See* Exhibit A-1.

[13] *See* Exhibit A at ¶26; *See also* Exhibit A-9, a true and correct copy of a screenshot of the signature page from Plaintiff's executed Arbitration Agreement.

[14] Even if Plaintiff had not expressly agreed to the Arbitration Agreement (which the evidence clearly shows he did), he accepted it by working for SpaceX. Neither federal nor Texas law requires that an arbitration agreement be signed in order to be enforceable, so long as it is written and agreed to by the parties. *See, e.g.*, 9 U.S.C. § 3; TEX. CIV. PRAC. & REM. CODE § 171.001(a); *see also Halliburton*, 80 S.W.3d at 569. "[A]cceptance need not be anything more complicated than continuing to show up for the job and accept wages in return for work." *Floyd*, 2019 WL 4452309,

Additionally, the Arbitration Agreement was supported by valid consideration in that SpaceX also promised and agreed to submit any Covered Claim it had against Plaintiff to binding arbitration as well. *In re 24R, Inc.,* 324 S.W.3d 564, 566 (Tex. 2010) ("Mutual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement."). In particular, Paragraph 1 of the Arbitration Agreement provided that "[t]he Parties shall resolve all Covered Claims (as defined below) through final, binding, and confidential arbitration, and as such, **EACH PARTY WAIVES THE RIGHT TO EITHER A JURY OR BENCH TRIAL AS TO ANY COVERED CLAIMS.**" In sum, the Arbitration Agreement is valid, thus satisfying the first step of the applicable legal analysis.

### C. PLAINTIFF'S CLAIMS ARE WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT

Plaintiff's claims fall squarely within the scope of the Arbitration Agreement. As discussed above, Paragraph 3 of the Arbitration Agreement regarding "Covered Claims" expressly covers all claims of employment discrimination (including specifically those arising pursuant to the ADEA), wrongful termination, wrongful discharge, discrimination harassment, and unlawful retaliation.[15] In the instant lawsuit, Plaintiff argues only that he was discriminated and/or retaliated against on the basis of his age in violation of the ADEA. "Because all claims are covered by the arbitration provision, they are properly referable to an arbitral forum." *Quinn v. EMC Corp.,* 109 F. Supp. 2d 681, 687 (S.D. Tex. 2000) (finding language in arbitration agreement covering "any dispute arising out of or relating to [Plaintiff's] employment by the Company, including, but not limited to … any alleged discrimination or termination of [Plaintiff's] employment"

---

at *5 (*citing Kubala,* 830 F.3d at 203). SpaceX presented Plaintiff with the Arbitration Agreement on or around February 23, 2020, after which he remained employed by, and received wages from, SpaceX until May 11, 2021. This is acceptance of the Arbitration Agreement as a matter of law. *In re Dallas Peterbilt, Ltd., L.L.P.,* 196 S.W.3d at 162.

[15] *See* Exhibit A-1 at ¶3.

sufficiently broad to cover the employee's claims under the Family and Medical Leave Act, the Americans with Disabilities Act, and the TCHRA).

### D. THE COURT SHOULD DISMISS THE LAWSUIT

Because a valid agreement to arbitrate exists between Defendant and Plaintiff, this Court has no discretion but to compel arbitration. *Moses H. Cone*, 460 U.S. at 24–25; *Halliburton*, 80 S.W.3d at 573; *Cantella & Co., v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996). While some circuits require district courts to stay a case when all claims are submitted to arbitration, the Fifth Circuit allows district courts to "dismiss such claims outright." *Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 839 (5th Cir. 2018); *see also Ruiz v. Donahoe*, 784 F.3d 247, 249–50 (5th Cir. 2015) ("If a dispute is subject to mandatory grievance and arbitration procedures, then the proper course of action is usually to stay the proceedings pending arbitration. However, a dismissal may be appropriate when all of the issues raised in the district court must be submitted to arbitration.") (internal quotations omitted) (citing 9 U.S.C. § 3; *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 658–59, 662 (5th Cir. 1995); *Adam Techs. Int'l S.A. de C.V. v. Sutherland Global Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013)). Further, it is proper for such claims to be dismissed with prejudice. *See, e.g.*, *Rainey v. Citigroup, Inc.*, 779 F. App'x 258, 259 (5th Cir. 2019) (holding the district court did not err in dismissing plaintiff's claims with prejudice when he was bound to arbitrate all of his claims).

All of Plaintiff's claims are covered by the Arbitration Agreement; consequently, the Order compelling arbitration of Plaintiff's claims should also provide for dismissal of this cause in this Court. Accordingly, Defendant respectfully requests that the Court enter an order compelling Plaintiff to pursue his claims through arbitration in accordance with the Arbitration Agreement and dismissing this action with prejudice, or, alternatively, staying this action pending completion of the arbitration proceedings.

DATED: August 24, 2022                     Respectfully submitted,

                                                        **DYKEMA GOSSETT PLLC**

                                          By:  */s/ Ramon D. Bissmeyer*
                                                   **Ramon D. Bissmeyer, Attorney In Charge**
                                                   TX State Bar No. 00787088
                                                   So. Dist. Bar No. 17446
                                                   **Kelly E. Preston**
                                                   TX State Bar No. 24092912
                                                   So. Dist. Bar. No. 3110232
                                                   Weston Centre, 112 E. Pecan Street, Suite 1800
                                                   San Antonio, Texas 78205
                                                   Telephone:  (210) 554-5500
                                                   Fax:  (210) 226-8395
                                                   Email:  RBissmeyer@dykema.com
                                                   Email:  KPreston@dykema.com

                                           **ATTORNEYS FOR DEFENDANT**
                                           **SPACE EXPLORATION**
                                           **TECHNOLOGIES CORP.**

                                           **THE VARGAS LAW OFFICE**

                                          By:  */s/ Daniel E. Vargas*
                                                   **Daniel E. Vargas**
                                                   TX State Bar No. 24072403
                                                   So. Dist. Bar No. 1286250
                                                   324 W. University Drive
                                                   Edinburg, Texas 78539
                                                   Tel. (956)287-3743
                                                   Fax. (956)365-9771
                                                   thevargaslawoffice@gmail.com

                                           **ATTORNEY FOR PLAINTIFF**
                                           **CARLOS MARTINEZ**

## CERTIFICATE OF SERVICE

      I hereby certify that on August 24, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following, and served it on the following counsel of record via email as indicated below:

Mr. Daniel E. Vargas
**The Vargas Law Office**
324 W. University Drive
Edinburg, Texas 78539
Email: thevargaslawoffice@gmail.com

                                                              By: */s/ Ramon D. Bissmeyer*
                                                                      Ramon D. Bissmeyer